811 F.2d 100
 Gary NELL, Plaintiff-Appellant,
v.
Warden Charles JAMES, Superintendent of Collins Correctional
Facility, John J. Santucci, District Attorney for Queens
County and Robert Abrams, Attorney General for the State of
New York, Defendants-Appellees.
 No. 47, Docket 86-2058.
 United States Court of Appeals,
Second Circuit.
 Submitted Aug. 28, 1986.
Decided Jan. 30, 1987.
 
 Robert Abrams, Atty. Gen. for State of N.Y., New York City (Lucas E. Andino, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.
 Before CARDAMONE, PIERCE and ALTIMARI, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 In 1967 the Supreme Court delivered its view of the role of court-appointed appellate counsel prosecuting an appeal from a criminal conviction when counsel believes the appeal has no merit. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Approximately 25 Anders briefs have been filed annually in this Circuit for the past two years. Over one-half of the briefs were submitted by private attorneys assigned to represent indigent defendants under the Criminal Justice Act, 18 U.S.C. Sec. 3006A (CJA). A significant number of these briefs fall below the standards set by the Supreme Court. We believe it necessary therefore to state again the Anders requirements for the benefit of those members of the private bar who undertake CJA assignments.
 
 
 2
 This appeal is from a judgment of the United States District Court for the Eastern District of New York (Sifton, J.) denying appellant Gary Nell's petition for a writ of habeas corpus sought pursuant to 28 U.S.C. Sec. 2254. Assigned counsel seeks to be relieved from representation and has filed an Anders brief. The Assistant Attorney General of New York moves for summary affirmance of the district court's order. For reasons to be explained shortly, we grant counsel's motion to be relieved and also grant appellant Nell's motion for assignment of new counsel. The State's motion for summary affirmance of the judgment of conviction is denied.
 
 
 3
 * A. Background
 
 
 4
 In May 1984, after Nell pled guilty to several counts of burglary and attempted burglary in the second degree, he was sentenced to 5 to 10 years as a second violent felony offender under N.Y. Penal Law Sec. 70.04. At sentencing, Nell was asked by the court whether he wished to controvert a 1979 felony conviction which was the predicate offense for an enhanced sentence as a violent-felony offender. Although informed that silence would be considered an admission, Nell requested that he be allowed to "stand mute". His attorney failed to controvert the 1979 conviction.
 
 
 5
 Nell subsequently moved pro se to vacate that conviction pursuant to N.Y. CPL Sec. 440.10 alleging that he had not received effective assistance of counsel in the 1979 proceedings. The motion was denied and leave to appeal was denied by the Appellate Division, Second Department, in February, 1985. Nell then filed the present petition in federal district court seeking habeas relief. In his petition, appellant attacks his 1979 conviction claiming that his counsel failed to present evidence which would have established his standing to challenge a search that implicated him in a robbery.
 
 
 6
 Nell had already challenged the 1979 robbery conviction in a prior habeas petition filed in 1981, the denial of which we affirmed by summary order. Nell v. Dunham, 722 F.2d 728 (2d Cir.), cert. denied, 464 U.S. 836, 104 S.Ct. 124, 78 L.Ed.2d 121 (1983). In his 1981 petition, insofar as here pertinent, appellant urged that the state had not provided an opportunity for full and fair litigation of his Fourth Amendment claim and that the identification testimony gained as a result of a search of his girlfriend's apartment should have been suppressed because he was also living in the apartment and therefore had standing to challenge the evidence seized.
 
 
 7
 The Fourth Amendment claim is based upon the following facts. Local police officers entered an apartment--where Nell lived with his girlfriend--looking for one Patrick Nolan; the police wanted to arrest Nolan for a parole violation in connection with an unrelated crime. Nolan, Nell and Nell's girlfriend were all in the apartment. While there, one of the officers obtained a miniature detective shield. Nell says that the detective obtained the shield by an unlawful search, but the State claims that Nell's girlfriend gave the shield to the officer. In any event, the shield was traced to the victim of a robbery that had occurred several days previously, and the victim identified Nell's photograph which resulted in his arrest.
 
 
 8
 Following a Wade hearing, the State court denied Nell's motion to suppress the identification testimony. Nell's counsel then moved for the same relief on the ground that the shield had been seized in violation of the Fourth Amendment and that the identification of Nell as the accused followed directly from the illegal search and seizure. But counsel's written affirmation in support of the motion stated that, at the time the police were searching for drugs and weapons in connection with Nolan's arrest, Nell had been present in "the apartment of his girlfriend". The affirmation failed to allege that Nell lived in the apartment. The motion to suppress was denied.
 
 
 9
 In May 1979 Nell pled guilty to a reduced charge of attempted robbery in the second degree. His later motion to vacate the judgment on the ground that his identification had come about from the illegal seizure of the miniature shield was denied. The Appellate Division, Second Department, affirmed his conviction, and the Court of Appeals denied leave to appeal.
 
 
 10
 In rejecting Nell's Fourth Amendment claim in the earlier 1981 habeas proceedings, Judge Sifton concluded that Nell's allegation of standing to challenge the search as presented to the State court was insufficient as a matter of law, since he had not asserted a property or possessory interest in the apartment. The district court further noted that though Nell now contended that he had been living with his girlfriend for a number of years and thus had a protectible privacy interest, it rejected this argument because Nell had not made this claim in the State court and had shown no cause for the failure.
 
 B. Instant Habeas Proceeding
 
 11
 In the present habeas petition--filed in March 1985--petitioner asserts that he was denied effective assistance of counsel in the 1979 proceedings because his attorney failed to present evidence establishing that he lived in his girlfriend's apartment. Nell asserts that the district court's denial of his 1981 habeas petition lends support to his ineffective assistance claim because the district court stated that the State suppression motion was insufficient as a matter of law.
 
 
 12
 The district court denied Nell's current habeas petition on January 23, 1986, finding the petition to be an abuse of the writ. The court held that appellant had failed to raise his ineffective assistance of counsel claim in the 1981 petition, though the facts underlying the claim were known to Nell at that time. The district court found unconvincing Nell's argument that he had not discovered that his counsel had been ineffective until reading the court's decision denying his 1981 petition. Moreover, the district judge concluded that the ineffectiveness claim was without merit since Nell had not alleged that he had provided facts which would have put counsel on notice as to the alleged privacy interest. Nonetheless, on February 18, 1986 the district court granted a certificate of probable cause to appeal.
 
 II
 A. Anders Brief
 
 13
 In Anders, the Supreme Court set forth several rules that govern counsel's role as an advocate in an appeal which counsel believes to be wholly frivolous, and from which counsel therefore seeks permission to withdraw. The rules also establish an appellate court's responsibility upon receiving such an application. The request to the court must: "be accompanied by a brief referring to anything in the record that might arguably support the appeal"; a "copy of counsel's brief should be furnished [to] the indigent" in a manner timely enough to permit him to raise pro se any points that he wishes. Upon receiving the application, the court--not counsel--decides "whether the case is wholly frivolous"; the court may then grant the motion to be relieved or "if it finds any of the legal points arguable on their merits (and therefore not frivolous)," the indigent must be given the assistance of counsel to argue his appeal. 386 U.S. at 744, 87 S.Ct. at 1400.
 
 
 14
 The purpose of the Anders brief is to assist an appellate court with ready record references and legal authorities in its review of a motion to affirm summarily a district court order or judgment. Anders, 386 U.S. at 745, 87 S.Ct. at 1400. Preparing an Anders brief is an important responsibility, one that requires counsel to search the record with care, and then to explain to an appellate court why there are no non-frivolous issues present. The task is not discharged by counsel either employing a too-fertile imagination in an effort to "dream up" new, untested legal theories or by a sophomoric type of report hurriedly prepared a day before the filing deadline. What is required is a good, thorough, lawyer-like piece of work that reveals counsel's conscientious examination, id. at 744, 87 S.Ct. at 1400, of the facts and law involved in appellant's case. This standard was not met in the instant appeal.
 
 
 15
 The brief that was filed does not reflect the required "conscientious examination" of Nell's case. In fact, it does little more than reiterate Judge Sifton's conclusions in a one and one-half page discussion of possible issues on appeal. In addition, the brief merely paraphrases or quotes--without acknowledgment--the district court's memorandum and order denying the petition, and contains no indication of an independent examination of the record. Thus, the brief that was filed fails to discharge assigned counsel's responsibilities under Anders v. California.[1] Moreover, Nell alleges in his motion papers that counsel failed to timely provide him with a copy of the brief.
 
 
 16
 B. Dismissal of Habeas Petition for Abuse of the Writ
 
 
 17
 We are not persuaded that this appeal is wholly frivolous. Before reaching what we consider to be a potentially meritorious argument, we first consider the district court's dismissal of the petition for an abuse of the writ. Rule 9(b) of the Rules Governing Section 2254 Cases provides that the district court "may" dismiss a "second or successive petition" asserting new and different grounds if "the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." 28 U.S.C. foll. Sec. 2254 (1982).
 
 
 18
 In Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the Supreme Court held that a district court, in the exercise of its discretion, could dismiss habeas petitions raising claims determined adversely to the petitioner in a prior petition if "the ends of justice would not be served by reaching the merits of the subsequent application." Id. at 15, 16-17, 83 S.Ct. at 1077, 1078. With regard to petitions presenting a new ground for relief not stated in earlier ones, the Court continued, if a petitioner "deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application" or "deliberately abandons one of his grounds" at a hearing on the first petition, he will not be entitled to relief. Id. at 18, 83 S.Ct. at 1078. Further, it noted that "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." Id.
 
 
 19
 Other circuits have held that when a petition raises new claims not included in a prior petition it should not be dismissed as an abuse of the writ, unless the failure to include the claims previously is due to inexcusable neglect or to the intentional withholding of the claims. In Re Shriner, 735 F.2d 1236, 1240 (11th Cir.1984); McLaughlin v. Gabriel, 726 F.2d 7, 10 (1st Cir.1984); Paprskar v. Estelle, 612 F.2d 1003, 1006 (5th Cir.), cert. denied, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980). Yet, because the purpose of the great writ is to prevent unlawful imprisonment, it would be unreasonable to deny a prisoner's attempt to obtain judicial relief where he is unaware of relevant facts affecting the merits of his petition. See Price v. Johnston, 334 U.S. 266, 291, 68 S.Ct. 1049, 1062, 92 L.Ed. 1356 (1948). The writ is not abused therefore when a habeas petitioner is excused for lack of knowledge of the facts, or, if he knows them, his failure to appreciate their legal significance is justifiable. Vaughan v. Estelle, 671 F.2d 152, 153 (5th Cir.1982).
 
 
 20
 There is no indication here that Nell's failure to raise the ineffective assistance claim in his 1981 petition was the result of deliberate withholding or inexcusable neglect. Although he can be charged with knowing what counsel said about his presence in his girlfriend's apartment, we think it justifiable that Nell failed to grasp the legal import of not contending that he lived there for the purpose of determining whether he had standing to advance the search and seizure claim. This nuance in Fourth Amendment law is significant to skilled criminal law practitioners, but not to laymen. Nell has met his burden of showing that he has not abused the writ by explaining that he did not understand that he might have an ineffectiveness claim until he read the district court's opinion denying his 1981 petition. As noted, that decision stated that appellant's motion in the State court to suppress was as a matter of law insufficient to warrant a hearing where facts might have been more fully developed. It is not unreasonable, for purposes of assessing whether Nell abused the writ, to assume that he may not have grasped the significance of his trial counsel's failure to assert his residency in the apartment before reading the district court's decision. Examination of the record on Nell's appeal before the Appellate Division reveals that Nell's attorney did not argue any of the underlying facts supporting a claim of residency and, therefore, standing. Instead, Nell's counsel made bland, unsupported assertions that the search occurred in Nell's house. Thus, we do not assume that Nell compared the two arguments--the one made at the suppression hearing and the one made on appeal--and concluded that his trial counsel was deficient in not arguing those facts at the suppression hearing.[2]
 
 
 21
 Nell's failure to understand the legal significance of the facts known to him--that is to say, counsel had not advanced Nell's residency in the apartment as grounds for standing to challenge the search--is a credible explanation for his failure to present the claim earlier, especially in light of Nell's pro se status. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (allegations in pro se complaint held to a less stringent standard than pleadings drafted by counsel). Thus, the ineffectiveness claim is addressed to specific acts and omissions by counsel and is not merely a disguised attempt to relitigate a Fourth Amendment claim. Moreover, the 1985 petition is only the second filed by Nell. Consequently, the district court erred in dismissing the petition for abuse of the writ.
 
 C. Ineffective Assistance of Counsel
 
 22
 We turn now to the claimed violation of Nell's Sixth Amendment right to the effective assistance of counsel. The Supreme Court recently affirmed that habeas relief is available for ineffective assistance claims based primarily upon incompetent handling of Fourth Amendment issues. Kimmelman v. Morrison, --- U.S. ----, ---- - ----, 106 S.Ct. 2574, 2582-87, 91 L.Ed.2d 305 (1986). The Court also articulated what a petitioner must establish: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [petitioner] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Id. at 2583. Hence, Nell must establish, first, that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy, Strickland v. Washington, 466 U.S. 668, 688-90, 104 S.Ct. 2052, 2065-66, 80 L.Ed.2d 674 (1984), second, that he had a meritorious Fourth Amendment claim, and, finally, that there is a reasonable probability that the verdict would have been different had the objectionable evidence not been admitted.
 
 
 23
 We turn to a discussion of the first two things that Nell must establish in order to succeed on his petition. We discuss them to make clear why summary disposition of Nell's claim of ineffective assistance of counsel is inappropriate. Because Nell's various allegations present at least a colorable claim and are therefore non-frivolous, we must remand to the district court. We, of course, intimate no view concerning the disposition of Nell's claim.
 
 
 24
 Nell alleges that counsel did not consult with him concerning the facts of the search prior to moving for suppression of the identification testimony and failed to investigate those facts. Nell's trial counsel, on the other hand, stated that he had consulted with Nell before the suppression hearing. Nell's allegation, if true, is relevant because in Strickland, the Court stated that "reasonable" representation requires counsel to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. 466 U.S. at 691, 104 S.Ct. at 2066. Although particular decisions not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments", id., counsel's alleged failure to investigate the question of Nell's standing to challenge the search would be unreasonable in light of the critical importance of that issue to the effort to suppress the evidence which led to the identification testimony. Moreover, consultation with Nell would seem to represent a minimal level of investigative effort.
 
 
 25
 Even if Nell's trial counsel had consulted with him before the hearing, Nell still presents a colorable claim of ineffective assistance for his counsel's failure to assert Nell's residency during the suppression hearing. Of course, on remand, Nell bears the burden of showing that any failure to assert Nell's residency in the apartment as grounds for challenging the search was unreasonable and that counsel's performance was contrary to prevailing professional norms, id. at 690, 104 S.Ct. at 2066.
 
 
 26
 Further, an evidentiary hearing is necessary to determine whether Nell has a Fourth Amendment claim sufficiently meritorious to support a finding of prejudice for counsel's failure to raise it. The State alleges that Nell's girlfriend voluntarily surrendered the miniature detective shield to the police, while Nell contends that this evidence was obtained by an illegal search. The question of Nell's ability to establish prejudice, see Kimmelman, 106 S.Ct. at 2583, therefore presents a non-frivolous issue on appeal. Having found the above issues arguable on their merits, it follows that Nell must be given the assistance of counsel to conduct further proceedings in his behalf. Anders, 386 U.S. at 744, 87 S.Ct. at 1400.
 
 III CONCLUSION
 
 27
 Accordingly, assigned counsel's motion to be relieved of representation is granted and the State's motion for summary affirmance of the order denying habeas relief is denied. Nell's motion for assignment of new counsel is granted, and the matter is remanded to the district court for further proceedings consistent with this opinion.
 
 
 28
 Circuit Judge ALTIMARI concurs in part and dissents in part in a separate opinion.
 
 
 29
 ALTIMARI, Circuit Judge, concurring in part and dissenting in part:
 
 
 30
 I agree wholeheartedly with my colleagues' concern about the inadequacy of the all-too-typical Anders brief filed in this case, and thus I concur in Part II-A of the majority opinion. I disagree, however, with the reversal on the merits, and therefore dissent respectfully from Parts II-B and II-C of their decision.
 
 
 31
 Judge Sifton rested his denial of Nell's habeas petition on two grounds. First, he found that the facts underlying Nell's current ineffective assistance of counsel claim were known to him when he first petitioned for habeas relief, thus rendering his current petition an abuse of the writ. He further concluded that, in any event, Nell failed to allege in this petition that he had advised his trial counsel of his purported residency in the searched apartment, so that trial counsel's failure to identify the apartment as Nell's residence could not be considered unreasonable under prevailing norms. Neither conclusion, in my view, can be disturbed without muddying the waters of the law on habeas corpus procedure and on ineffective assistance of counsel claims.
 
 
 32
 The majority's reversal on the first ground rests on its rejection of Judge Sifton's finding that Nell knew about the basis for the denial of his trial court suppression motion. The state court record, however, demonstrates that the prosecutor opposed that motion on standing grounds, pointing to the fact that it was Nell's girlfriend's apartment that was searched. The record also shows that on direct appeal to the Appellate Division, Nell's argument shifted: appellate counsel identified the apartment as Nell's own residence in his appellate brief. The state's brief on appeal, on the other hand, again focused on Nell's failure to assert either a proprietary or possessory interest in his girlfriend's apartment. The shift in Nell's presentation of the facts underlying his fourth amendment claim, and the prosecutor's insistence that Nell did not reside in the searched premises, show that even during his state appeal, Nell had to be aware that trial counsel's purported failure to assert Nell's residency in the apartment had led to the denial of the suppression motion.
 
 
 33
 Unlike the majority, I see no possible basis for crediting Nell's assertion that he became aware of the legal significance of trial counsel's conduct only upon reading Judge Sifton's opinion denying his first habeas petition. I fail to see how Judge Sifton's indication that the suppression motion was insufficient as a matter of law could suddenly highlight the alleged inadequacy of trial counsel's performance, when the supposedly inaccurate version of the facts presented by trial counsel had been the focal point of the proceedings in the state courts. Thus, although I agree with the majority that the nuances surrounding standing to raise fourth amendment claims are difficult for laymen to understand, I cannot agree that, on this record, Nell's delay in arguing the constitutional inadequacy of trial counsel's performance is excusable. Rather, I am convinced that the course of litigation in state court more than adequately supports the district court's conclusion that Nell knew or reasonably should have known, at the time he filed his first petition, that the question of his residency in the searched apartment was a crucial factor in the state courts' rejection of his fourth amendment claim. His failure to raise his ineffective assistance of counsel claim at that time, therefore, is inexcusable.
 
 
 34
 The majority's treatment of the merits of Nell's ineffective assistance claim, in my view, goes beyond the Supreme Court's admonition that defense counsel must "make reasonable investigation" into potentially relevant facts. Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The majority, in my view, ignores reality and stands the attorney-client relationship on its head when it holds that counsel was obligated to inquire about whether the apartment identified as Nell's girlfriend's could instead be represented as Nell's own residence. The state court record demonstrates that counsel did consult with his client prior to filing the motion to suppress. In fact, trial counsel affirmed, "[b]ased on conversations [he had] with the defendant," that the arresting officers unlawfully "entered the apartment of [Nell's] girlfriend." The attorney's affirmation indicates that Nell himself identified the apartment as his girlfriend's home. Counsel, acting reasonably and professionally, would and should accept his client's word as to where he resided at the time of the arrest.
 
 
 35
 The majority's conclusion that trial counsel's alleged conduct was unreasonable in effect imposes on defense attorneys the obligation to explore the possibility of exaggerating their clients' interest in searched premises. The Strickland Court's reaffirmation of counsel's duty to make reasonable inquiries, see 466 U.S. at 691, 104 S.Ct. at 2066, does not mandate that counsel initiate such a discussion. Judge Sifton's treatment of this issue--placing on Nell the burden to show that he somehow suggested to trial counsel the possibility of claiming a resident's interest in his girlfriend's apartment--more accurately reflects both the reality of attorney-client relationships and the role that defense counsel should fulfill as advocates in criminal proceedings. Applying the guidelines set out in Strickland v. Washington, supra, I would agree with the district court's determination that at the time of trial, counsel had no reason to represent the apartment as Nell's own residence.
 
 
 36
 For these reasons, I concur in the majority's discussion of the inadequacy of counsel's Anders brief, but I would affirm the district court's denial of Nell's second habeas petition. More specifically, I agree with the lower court both that this second petition is an abuse of the writ and that Nell has not alleged a sufficient factual basis to support his ineffective assistance of counsel claim.
 
 
 
 [1]
 In light of that failure, the voucher submitted by assigned counsel for his services has been reduced
 
 
 [2]
 The dissent acknowledges that standing is an elusive concept for laymen to grasp. But rather than requiring Nell's lawyer to inquire into the facts underlying his client's statement--which any lawyer worth his or her salt should do--the dissent says that the lawyer should accept the statement at face value. Thus, contrary to its acknowledgement, Nell is made responsible for understanding standing's nuances