Duane W. **SANDERS**, Appellee,

v.

Harold W. **CLARKE**, Warden, Nebraska State Prison, Appellant.

No. 87–2197.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 9, 1988.

Decided Sept. 12, 1988.

Lynne R. Fritz, Asst. Atty. Gen., Lincoln, Neb., for appellant.

Thomas V. Van Robays, Omaha, Neb., for appellee.

Before McMILLIAN, ARNOLD, and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

In this habeas appeal we consider the intersection between the procedure counsel must follow to withdraw from a frivolous appeal under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and the standards for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The District Court held the no-merit brief filed by defendant's counsel did not comply with *Anders*, and then, believing no showing of prejudice was necessary to prove ineffective assistance of counsel, conditionally granted a writ of habeas corpus on that ground. The State appeals both these rulings. We agree with the District Court's assessment of the *Anders* brief filed, but because we now hold that a defendant must prove he was prejudiced by his lawyer's nonconforming *Anders* brief to establish ineffective assistance of counsel, we reverse.

## I.

On July 25, 1980 Larry Robinson was cleaning up the Nifty Bar after closing. He was alone. At about 1:15 a.m. a man knocked on the glass portal of the front door of the bar and said he needed change for a ten-dollar bill. Robinson later recalled that he had seen the man earlier that evening while he was tending bar. At first Robinson refused to help the man, explaining that the bar was closed. But when the man insisted, claiming that it was an emergency, Robinson relented and got the change from the cash register. He had cracked open the door to exchange money when the man wedged his foot in and forced the door open, brandishing a revolver. The intruder made Robinson lie on the floor. Then he looted the cash register and took the bartender's wallet, watch, and ring. He started to leave, but then stopped and said, "On second thought, you're not going anywhere." He shot Robinson at close range in the back of the head. Fortunately, Robinson survived. There was no direct injury to the brain, though he continues to suffer from neck pain and numbness in his hands.

The appellee, Duane Sanders, was arrested on September 30th. After he was informed of his rights and questioned about the incident at the Nifty Bar, Sanders confessed to having robbed the bar and shot the bartender. When asked to repeat his statement into a tape recorder, Sanders refused and asked to speak to a lawyer. Questioning ceased while police called the public defender's office. However, because the call was made after hours, no lawyer was available to come to the station. The public defender who answered the phone instructed the police to tell the defendant to remain silent. Apparently Sanders took this advice; no taped statement was made.

That same day police called three people down to view Sanders in a line-up: Barbara O'Kane, Thomas Hegarty, and Larry Robinson. O'Kane was a barmaid at the Nifty Bar and had been working the night of the robbery. Earlier she had told police about a man who came into the bar the night of the shooting and asked for change for a quarter. The man had peered into the cash drawer, standing on his toes, when she opened it to make change. She had exchanged glances with Robinson and bar patron Thomas Hegarty over the man's behavior. Hegarty had remarked it was odd for someone to get change and then not use the phone. O'Kane, Hegarty, and Robinson had looked at hundreds of photographs in the hopes of identifying the man in the bar and/or the robber. None had made an identification prior to the line-up.

Robinson viewed the line-up first. Afterwards he told police he was not ready to make a positive identification. O'Kane then viewed the same three men, and picked Duane Sanders as the man she had seen in the bar. Hegarty also identified Sanders. After all three witnesses had viewed the line-up once, they were placed in a room together and allowed to talk among themselves. O'Kane and Hegarty told Robinson they had picked one of the men out of the line-up. A policeman told the group that the man O'Kane and Hegarty had chosen had confessed to the crime. On October 8th, at a preliminary hearing, Robinson identified Sanders as the man who shot him and robbed the bar. He explained his previous failure to identify Sanders as due to a "psychological barrier" against admitting he had seen his assailant.

Sanders was tried to a jury and found guilty of attempted second-degree murder, robbery, and use of a firearm in the commission of a felony. On direct appeal to the Nebraska Supreme Court, Sanders' appointed lawyer filed an *Anders* brief seeking to withdraw from the appeal on the ground that it was frivolous. The Court granted the attorney's motion and affirmed the conviction. 209 Neb. xx–xxi (1981). After exhausting his state remedies, Sanders filed a habeas petition which was conditionally granted by the District Court. Under the District Court's order, Sanders would have to be released unless the State allows him another, belated direct appeal, with counsel who would, at least, file a brief complying with *Anders*. This appeal by the State followed.

We are presented with two questions: (1) Was the no-merit brief filed by Sanders' counsel adequate under *Anders v. California,* and (2) if it was not, must Sanders demonstrate that he was prejudiced by his attorney's deficient brief?

## II.

■ The State first contests the District Court's determination that *Anders* was not complied with.[1] Admitting that counsel's brief does not argue for reversal of Sanders' conviction, the State contends that arguments for reversal are not required under *Anders,* citing *Nickols v. Gagnon,* 454 F.2d 467 (7th Cir.1971), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 336 (1972), for support. *Nickols* declared that the no-merit brief does not have to *argue* the defendant's case, but need only *"refer* [ ] to anything in the record that might arguably support the appeal." *Id.* at 471–72 n. 8, quoting *Anders,* 386 U.S. at 744, 87 S.Ct. at 1400 (emphasis added). The State acknowledges that this interpretation of *Anders* clashes with an Eighth Circuit case, *Robinson v. Black,* 812 F.2d 1084 (8th Cir.1987) *petition for cert. filed,* 56 U.S.L. Week 3134 (U.S. Aug. 3, 1987) (No. 87–211),

but asks this panel of the Court to modify that decision.[2]

In *Anders v. California,* the Supreme Court described the extent of the duty of court-appointed counsel to prosecute a first appeal from a criminal conviction after he has conscientiously determined that the indigent's appeal has no merit. 386 U.S. at 739, 87 S.Ct. at 1397–1398. The Court concluded that if counsel found the case to be wholly frivolous, he should advise the court and ask permission to withdraw. *Id.* at 744, 87 S.Ct. at 1400. However, the Court also required counsel to file a brief along with his request "referring to anything in the record that might arguably support the appeal." *Id.* Throughout this process, the lawyer was directed to "act in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae." Id.* In *Robinson v. Black,* this Court clarified counsel's duties, directing him "to brief and argue [defendant's] case to the best of [his] ability, showing the most favorable side of the defendant's arguments." *Id.* at 1086.

We agree with the District Court that the brief filed by Sanders's counsel does not comply with *Anders.* The eight-page memorandum reads like a summary of the proceedings, with emphasis given to reasons for holding them correct.[3] No argu-

---

1. The District Court listed two ways in which the *Anders* procedure was not satisfied: first, counsel filed a brief which did not make arguments for reversal; second, the Nebraska Supreme Court did not specifically find that the appeal was frivolous. While we agree counsel's brief was inadequate, we do not think the Nebraska Supreme Court failed to find the appeal was frivolous. By affirming Sanders' conviction upon the no-merit brief under Nebraska Supreme Court Rule 20–A(8)—now Rule 3 B(4) —we think the Nebraska Supreme Court necessarily found the appeal was frivolous. The Rule provides "if, upon consideration of a motion [to withdraw] and a review of the record, it appears that the decision of the trial court should be affirmed or reversed, the court may take such action on its own motion." The Rule appears to embody the *Anders* procedure for handling frivolous appeals. This conclusion is buttressed by the fact that in referring to its earlier decision in Sanders's post-conviction appeal, the Court cited *Anders* in conjunction with the Rule. *State v. Sanders,* 220 Neb. 308, 369 N.W.2d 641 (1985). Thus, we believe a finding of frivolousness was inherent in the state court's ruling.

2. Of course, we cannot do that.

3. The following paragraph is representative:

3. The Defendant made the usual motion for a directed verdict (B/E 356). There is clearly sufficient evidence, if believed, to support the jury's finding that the Defendant was guilty. There were several witnesses who testified to the Defendant's presence in the bar to obtain change of a quarter and his unusual conduct in peering over into the cash register at that time. He was also observed in the parking lot of the bar 45 minutes after the change was given. In addition, the victim himself identified the Defendant as the individual who knocked on the door after the bar had closed, forced his way in and robbed and shot him. In addition, of course, the Defendant admitted the commission of the crime to Officer Farmer after being fully advised of his rights. The Defendant did not testify, and although there was evidence presented of an alibi, the credibility of the witnesses and the weight of their testimony is for the jury to decide and will not be disturbed unless clearly wrong. *State v. Leary,* 185 Neb. 76, 176 [173] N.W.2d 520. The jury obviously chose to believe the State's witnesses and not the alibi evidence presented by the defense.

ments are made for reversal, no cases cited which might support Sanders's appeal. Indeed, the narrative is so seamless it is difficult to discern what the points of error are. In short, the memorandum reads like the *amicus* brief forbidden in *Anders*. In any case, because it fails to offer arguments in support of defendant's appeal, the brief is inadequate under *Robinson*.[4]

### III.

Next the State argues that the District Court should have required Sanders to prove he was prejudiced by his counsel's deficient *Anders* brief. Because we now explicitly hold that the standard for ineffective assistance of counsel set forth in *Strickland* applies to this situation, we reverse.

The indigent criminal appellant has the right to an attorney in his first appeal as of right. See *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). This right necessarily comprehends the right to the effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Though the Supreme Court declined to lay out the appropriate standards for judging claims of ineffective assistance of appellate counsel in *Evitts*, *id.* at 392, 105 S.Ct. at 833–834, this Court has applied the two-part *Strickland* standard. *Bell v. Lockhart*, 795 F.2d 655 (8th Cir.1986); *Beavers v. Lockhart*, 755 F.2d 657 (8th Cir. 1985). Thus, to sustain a claim of ineffective assistance of appellate counsel, the defendant must show his counsel's performance was unreasonable under prevailing professional norms, and that but for the deficient performance there is a reasonable probability the outcome would have been different.

In his habeas petition, Sanders contends that he was denied the effective assistance of counsel when his lawyer filed a non-con-

forming *Anders* brief. Thus, unless this is a situation where prejudice is presumed, the *Strickland* standard applies, and Sanders must show he was prejudiced—that is, Sanders must show a reasonable probability that the outcome of his appeal would have been different if his counsel's brief had satisfied *Anders*. Naturally, Sanders argues this is an instance where prejudice must be presumed. In support of his contention, he relies on *Robinson v. Black, supra*, arguing that because a prejudice requirement was not mentioned in that case, one does not exist. This was also the interpretation given *Robinson* by the District Court.

The rule to be gleaned from *Robinson* is unclear. True, the case does not explicitly require a showing of prejudice. In fact, it does not discuss at all the relationship between *Anders* and *Strickland*, nor does it mention the standard for ineffective assistance of appellate counsel. However, before sending the case back to the Nebraska Supreme Court, the panel carefully evaluated the arguments of the defendant, and concluded they were "far from frivolous." *Robinson, supra*, at 1087. Indeed, the Court presented Robinson's case as it should have been briefed and explored it in detail. The Court pointed out possibly inadmissible testimony which came in as evidence that "may have tipped the balance toward the jury's guilty verdict" and observed "it took two trials, and much deliberation in the second, for a jury to convict Robinson." *Id.* at 1087 n. 8. In *Robinson* a searching inquiry into potential prejudice was in fact made.

Thus, *Robinson* can be read as consistent with requiring a showing of prejudice before finding ineffective assistance of counsel in the *Anders* context. Supporting the notion it should be read this way is an earlier case, *Beavers v. Lockhart, supra*, where a claim involving an inadequate *Anders* brief is treated as ineffective assistance of appellate counsel and the potential

4. In *McCoy v. Court of Appeals of Wisconsin*, —— U.S. ——, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988), the Supreme Court upheld a rule of court requiring *Anders* briefs to contain, in addition to anything in the record arguably justify-

ing reversal, appointed counsel's reasons for believing the appeal to be frivolous. We do not believe that this holding directly involves any issue raised in the present appeal.

prejudice suffered by the defendant is evaluated, not assumed. *Beavers, supra,* at 663. *Beavers* also does not discuss why the *Anders* claim was treated in this manner.

We think that prior law in this Circuit points toward requiring a showing of prejudice to prove ineffective assistance of counsel where a nonconforming *Anders* brief is filed. We now state this rule explicitly, and explain why it is the soundest way of reconciling *Anders* and *Strickland.*

Other circuits have also examined the relationship between *Anders* and *Strickland.* Some have concluded *Strickland* modified *Anders* without offering an explanation. *Nell v. James,* 811 F.2d 100 (2d Cir.1987); *Lockhart v. McCotter,* 782 F.2d 1275 (5th Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987). Others have held an *Anders* violation to constitute per se ineffective assistance of counsel. *Freels v. Hills,* 843 F.2d 958 (6th Cir.1988); *Cannon v. Berry,* 727 F.2d 1020 (11th Cir.1984). In *Freels,* the Sixth Circuit concluded that the more specific dictates of *Anders* should control over the general ones of *Strickland. Freels, supra,* at 963. In *Cannon,* a pre-*Strickland* case, the Eleventh Circuit expressed concern that if a showing of prejudice were required, then compliance with the *Anders* procedure would be eroded. *Cannon, supra,* at 1024.

Though the reservations of the Sixth and Eleventh Circuits give us pause, on balance we find the position that is evolving in our own Circuit more persuasive. We think that rigorous observation by counsel of the *Anders* procedure need not be eroded by imposing a prejudice requirement on defendants arguing ineffective assistance of counsel. Most lawyers take their professional responsibilities seriously, and when they fail to fulfill their duties in the *Anders* situation, we think they do so more from misunderstanding and uncertainty than sloth or willfulness. Ethical sanctions or public reprimand would still be available

for the truly lazy lawyer. And while it is true that *Strickland* did not mention *Anders,* it did list other situations as instances of per se ineffective assistance of counsel. *Strickland, supra,* at 692, 104 S.Ct. at 2067. This list, though not exhaustive, evidences situations (like a conflict of interest) where the reliability of the fact-finding process is severely undermined, and the degree of prejudice is impossible to determine. As the Court observed in *United States v. Cronic,* "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of [the] challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). The same remark applies, *mutatis mutandis,* to the appellate process. Indeed, we must also not forget that under *Anders* it is the Court—not counsel—which decides whether the case is wholly frivolous after a full examination of all the proceedings. *Anders, supra* 386 U.S. at 744, 87 S.Ct. at 1400.[5]

We note as well a strong practical argument in favor of requiring a showing of prejudice. It could well be that the inadequate *Anders* brief reaches the right conclusion, that the appeal is frivolous. However, if prejudice is presumed, then the case must be remanded to the state court, a new appellate brief written, a fresh direct appeal made to the state court, and only then, after a significant expenditure of time and resources, might the case again be dismissed as frivolous—following which, no doubt, the petitioner would return to the habeas court to present questions which can just as well be looked at now. It seems more logical and efficient for the inquiry into the appeal's merit to come here, at the stage where the adequacy of the *Anders* brief is settled. In this manner

---

5. We point out that this is not a case where no appeal at all was taken, or where, due to some technical error by counsel, the appeal was lost. See, *e.g., Evitts; Williams v. Lockhart,* 849 F.2d 1134, 1137 n. 3 (8th Cir.1988); *cf. Griffin v.*

*West,* 791 F.2d 1578 (10th Cir.1986). Sanders's attorney wrote and filed some brief, thereby securing review of his client's conviction by the Nebraska Supreme Court.

the later potentially wasteful steps may be avoided. Of course, if prejudice is shown, then the case will be remanded to state court, and the new direct appeal will take place. See, *e.g., Robinson v. Black, supra.*

## IV.

█ Having established a prejudice requirement, we now look to see if it is met. Six arguable issues can be discerned from the *Anders* brief. None has merit. Thus, Sanders was not prejudiced by the lack of advocacy in the brief. Nor, upon reviewing the record ourselves, do we find other unpresented issues which have merit.

First, Sanders might argue his confession was illegally obtained. However, it was Sanders who requested that he speak to the arresting officer, and then admitted he had shot Robinson and robbed the bar. The defendant initiated the contact, and was not coerced or deceived into doing so. He was properly warned before the confession and was warned again after. When he refused to give a taped statement without a lawyer, the police attempted to secure counsel for him. When an attorney was not able to come to the station, questioning by police ceased. Thus, Sanders's confession was voluntary.

Next, Sanders might argue there were defects in the identification procedures followed by police during his line-up. He might claim that the procedure was unreliable, since he was the only man in the line-up with braided hair and with white shoes. We do not believe these slight differences in the men's appearances fatally infected the reliability of the line-up. While we do not encourage the police practice of telling witnesses that a man who confessed to the crime was in the line-up, we do not believe their doing so tainted the identification made here. The three witnesses had viewed hundreds of photographs without making an identification. Two of them picked Sanders without being told the suspect was present. While it is possible that Robinson, the victim and only eyewitness, may have been influenced by the police's revelation, the jury heard about Robinson's initial reluctance to identify Sanders, and was capable of evaluating his credibility.

Sanders could claim the evidence against him was insufficient to convict. However, there is a heavy burden of proof on one trying to overturn a jury verdict. After reviewing the evidence ourselves, we conclude that burden was not met here. The defendant could also appeal a host of evidentiary rulings which went against him at trial. These appear to have been correct, and in any case did not affect the outcome of the proceedings.

Finally, Sanders might contest the harshness of the sentence he received. He was given 16 to 50 years on the attempted murder charge, 16 to 50 years on the robbery charge, and 6 to 10 years on the firearm offense, all sentences to run consecutively. These sentences were all within the statutory limits, however, and it is within the trial judge's discretion to set them to run consecutively. Given the defendant's past criminal record and the particulars of his latest offense, we do not think the trial judge abused his discretion in imposing the punishment he did. It is equally clear that the Eighth Amendment was not violated.

We conclude that Sanders's appeal would have been found to be frivolous even if it had been argued by his lawyer in conformity with *Anders.* Thus, because Sanders was not prejudiced by his lawyer's failure to argue the issues referred to in the brief, he did not receive ineffective assistance of counsel. Accordingly, the judgment of the District Court is reversed, and the writ of habeas corpus denied.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. Although I agree with the majority that the no-merit brief filed by Sanders' counsel did not comport with *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), I can not agree that Sanders must also show prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in order to obtain relief. Hence, I

would affirm the district court's issuance of a writ of habeas corpus.

The record shows that Sanders' counsel filed a motion to withdraw because he:

ha[d] thoroughly and conscientiously examined the record in said case, ha[d] briefed all legal issues which might arguably support a direct appeal, ha[d] found none of them arguable on their merits, and ha[d] concluded that a direct appeal [could] only be considered wholly frivolous.

Accompanying this motion was a memorandum brief which set out a summary of the evidence and mentioned several issues: (1) suppression of statements made by Sanders, (2) suppression of the eyewitnesses' identification of Sanders, (3) the introduction of a composite drawing of the alleged assailant, (4) the sufficiency of the evidence, (5) rulings on objections to evidence, and (6) Sanders' sentence. None of the identified issues was argued favorably for Sanders; counsel's conclusion was that there was no error.

The Nebraska Supreme Court, relying upon the motion, held:

No. 44019; *State v. Sanders.* Motion of court appointed counsel for leave to withdraw appearance sustained; judgment affirmed. *See* Rule 20–A(8).

209 Neb. xx–xxi (1981). Rule 20–A(8), now Rule 3B(4), provides:

If upon consideration of a motion [to withdraw] and a review of the record, it appears that the decision of the trial court should be affirmed or reversed, the court may take such action on its own motion.

In my opinion, the brief filed by Sanders' counsel, the opinion of the Nebraska Supreme Court, and Nebraska's Rule 3B(4) all run afoul of *Anders.* In *Anders,* the Court set out four requirements to be satisfied in order for a state to resolve an indigent's direct appeal without the aid of counsel:

(1) a finding by counsel that the case is wholly frivolous, after a conscientious examination, advise to the court of that finding, and a request for withdrawal;

(2) a brief by counsel referring to anything that might arguably support the appeal;

(3) furnishing the indigent a copy of the brief and giving him time to raise any points he chooses; and

(4) a finding by the court that the case is wholly frivolous.

386 U.S. at 744, 87 S.Ct. at 1400.

The majority holds, and I agree, that the "brief" filed by Sanders' counsel did not satisfy Item 2. It reads like an *amicus curiae* filed on behalf of the state, making no arguments for reversal, but rather preempting any such arguments with the conclusory assertion that all possible arguments for reversal would be frivolous. This does not come close to satisfying *Anders,* particularly as we have applied that case in *Robinson v. Black,* 812 F.2d 1084, 1086 (8th Cir.1987), *petition for cert. filed,* 56 U.S.L.W. 3134 (U.S. Aug. 3, 1987) (No. 87–211) (counsel must "argue his case to the best of counsel's ability, showing the most favorable side of the defendant's arguments").

It is equally clear to me that the Nebraska Supreme Court's opinion did not satisfy Item 4. The Nebraska court did not make, nor has it ever made, a finding that the case is wholly frivolous. The Nebraska Supreme Court simply stated "affirmed;" there is and was no discussion or any declaration of its findings. Even on the post conviction appeal, *State v. Sanders,* 220 Neb. 308, 369 N.W.2d 641 (1985), the court did not declare that it had earlier found the direct appeal wholly frivolous. The court merely referred to its summary affirmance rule and cited *Anders.* In no way can this be said to amount to a finding that the appeal was wholly frivolous as required by *Anders.* In a footnote, the majority very conveniently attempts to explain away the Nebraska Supreme Court's lack of compliance with *Anders* by cavalierly stating:

By affirming Sanders's conviction upon the no-merit brief under Nebraska Supreme Court Rule 20–A(8)—now Rule 3–B(4)—we think the Nebraska Supreme Court necessarily found the appeal was frivolous. The Rule provides "if, upon

consideration of a motion [to withdraw] and a review of the record, it appears that the decision of the trial court should be affirmed or reversed, the court may take such action on its own motion." The Rule appears to embody the *Anders* procedure for handling frivolous appeals. This conclusion is buttressed by the fact that in referring to its earlier decision in Sanders's post-conviction appeal, the Court cited *Anders* in conjunction with the Rule. *State v. Sanders*, 220 Neb. 308, 369 N.W.2d 641 (1985). Thus, we believe a finding of frivolousness was inherent in the state court's ruling.

This, in my opinion, is an impermissible presumption made from a silent record. It certainly seems equally plausible that the Nebraska Supreme Court never considered whether the appeal was frivolous. This abortive attempt by the majority to rewrite the specific and detailed requirements of *Anders* would even cause Procrustes himself to blush. Here, the Nebraska Supreme Court not once, but twice, had a chance to conform its ruling with *Anders;* that is, if the appeal was frivolous, it had only to say so and set out its reasons for so concluding.

I also disagree with the majority's warrantless conclusion that Rule 3B(4) "appears to embody the *Anders* procedure for handling frivolous appeals." On the contrary, Rule 3B(4) on its face clearly conflicts with the holding of *Anders*. While *Anders* requires a specific finding that the appeal is frivolous, Rule 3B(4) states a much more lenient standard providing that if the decision of the trial court should be affirmed or reversed the court may proceed to do so.

Aside from my differences with the majority's application of *Anders* here, I believe the more fundamental error committed by the majority is the decision to apply the *Strickland* standard of ineffective as-

sistance of counsel to cases in which counsel files a brief that does not comport with *Anders*. The majority begins, as it must, by noting that every indigent criminal appellant has the right to an attorney in his first appeal as of right. *See Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). But if a state were to completely deny an indigent criminal appellant the right to counsel, would he be required to demonstrate prejudice? I think not. *Strickland* itself provides that prejudice is presumed if the defendant is denied the actual or constructive assistance of counsel. 466 U.S. at 692, 104 S.Ct. at 2067. Today, however, the majority holds that the indigent criminal appellant must demonstrate prejudice if the state, rather than failing to provide any counsel, instead provides one who dutifully prepares an *amicus* brief for the state. A more anomalous result could not be reached. I would hold that prejudice is presumed where the only counsel afforded an indigent defendant files a brief in favor of the state.

Moreover, I believe that the majority's decision to apply *Strickland* to cases in which counsel has filed a non-conforming *Anders* brief impermissibly conflicts with the precedent of this circuit. In *Robinson v. Black*, 812 F.2d 1084 (8th Cir.1987), *petition for cert. filed*, 56 U.S.L.W. 3134 (U.S. Aug. 3, 1987) (No. 87–211), we held that an indigent criminal appellant was entitled to relief because his attorney filed a brief that was inadequate under *Anders*. In *Robinson v. Wyrick*, 635 F.2d 757 (8th Cir.1981), we held that an indigent criminal appellant was entitled to relief because his attorney filed no appellate brief at all. In neither case did we require the appellant to demonstrate prejudice.[1] This position is in accord with both of the other circuits which have given this matter careful consideration.

---

1. The majority's assertion that *"Robinson* can be read as consistent with requiring a showing of prejudice" merely because the *Robinson* court noted in a footnote a few of the arguments that could have been made had counsel cared is disingenuous. The relative merits of these possible arguments clearly had no role in the

court's analysis. I refrain from pointing out the substantial issues raised by the identification procedures used in connection with the only eyewitness to this crime for fear that I, too, will be misunderstood as dissenting only because prejudice appears on the record.

*See Freels v. Hills,* 843 F.2d 958 (6th Cir. 1988); *Cannon v. Berry,* 727 F.2d 1020 (11th Cir.1984).

I believe it is important to remember that we are dealing with the sixth amendment right to counsel, a right that protects and safeguards all of the bundle of other rights and privileges that are so fundamental to the administration of justice; without effective assistance of counsel the whole pretrial, trial, and appellate process becomes blurred. Under our adversarial system of justice, it cannot be argued that the absence of effective assistance of counsel is not prejudicial *per se.* How could it be otherwise when counsel, as here, surrendered his role as an advocate and donned the cloak of an additional prosecutor? As Chief Judge Lay wrote in *Robinson v. Black,* 812 F.2d at 1086–87:

> Robinson had a right to expect counsel to brief and argue his case to the best of counsel's ability, showing the most favorable side of the defendant's arguments. Counsel changed the adversarial process into an inquisitorial one by joining forces with the state and working against his client. Upon Counsel's withdrawal, Robinson was left to proceed pro se against the state, which had the benefit of appointed counsel's brief.

Because *Anders* mandates the protection of such a basic fundamental right as the effective assistance of counsel on appeal, I would affirm the district court's decision to grant the writ of habeas corpus. The record shows that Sanders has been abandoned by his attorney, who has egregiously put his thumb on the scales of justice as a second prosecutor against his client. No additional prejudice need be shown.