**Darwin Jay ROBINSON, Sr., Appellant,**

v.

**Charles J. BLACK, Warden, Nebraska State Penitentiary, Appellee.**

No. 86–1710.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1986.

Decided March 5, 1987.

Rehearing and Rehearing En Banc
Denied May 5, 1987.

Thom K. Cope, Lincoln, Neb., for appellant.

Sharon M. Lindgren, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before LAY, Chief Judge, WOLLMAN, and MAGILL, Circuit Judges.

LAY, Chief Judge.

Darwin Jay Robinsion, Sr., brought this habeas corpus action to challenge his 1981 Nebraska conviction for armed robbery, using a knife in the commission of a felony, and being a habitual criminal. The district court [1] denied Robinson's petition. On appeal, Robinson argues that he had ineffective assistance of counsel at a pretrial suppression hearing, that impermissibly suggestive procedures were used to identify him as the robber, that illegally seized evidence was used to convict him, that he was wrongfully interrogated by a state informant without counsel, and that he was denied effective assistance of counsel on direct appeal of his conviction.

We sustain Robinson's claim that he was deprived of effective assistance of counsel on his state appeal and therefore reverse the district court.

**Background**

Shortly before 7:00 a.m. on January 31, 1981, a convenience store in Omaha, Nebraska, was robbed at knifepoint. Store attendant Marvin Pfeifer and Michael Klaumann, an employee just coming on duty as the robbery ended, were the primary witnesses to the incident. When Pfeifer told Klaumann what had happened, Klaumann got in his car and pursued the man he had just passed in the doorway. The suspect drove a white Buick to an apartment complex a few blocks away. Klaumann soon led police to that complex, and they towed the white Buick away. Moments later, a woman identifying herself as Shirley Robinson (the petitioner's wife) telephoned the police that her car had been stolen. Two officers then entered the petitioner's apartment, where the woman, who

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska, presiding.

actually was Edna Lyncook, continued to identify herself as Shirley Robinson. The officers saw an 8 × 10 color photograph of Darwin Robinson in the apartment. The phony Mrs. Robinson allowed[2] an officer to remove the picture from the apartment.[3] When the police told the woman that the car had been involved in a robbery, she admitted her real identity and told the officers that Darwin Robinson was upstairs in her mother's apartment. (Lyncook testified at trial that Darwin Robinson had instructed her to file the false stolen car report.) The police went upstairs and arrested Robinson.

The officers then took Robinson downstairs to his apartment. At this point the real Mrs. Robinson was found there. The police did not get a warrant, did not use a consent form, and did not seek Darwin Robinson's consent to search the apartment further. A blue jacket similar to one described by Klaumann as being worn by the robber was found.[4] The police then took Robinson to the convenience store and walked him in front of Klaumann, who identified him as the robber.

While Robinson was jailed pending trial, another inmate, Robert Koppock, obtained information from Robinson about the offense charged. What Robinson did not then know was that before being arrested Koppock was a paid informer for the Nebraska Highway Patrol, and his salary continued at $100 per week while in jail. Koppock testified at trial as to Robinson's allegedly incriminating statements and other information received from Robinson.[5]

Robinson was tried twice for the robbery. The first trial was held on October 5, 1981, but the presiding judge declared a mistrial when the jury was unable to reach a verdict. The second trial began on November 2, 1981. After hearing the evidence, the jury deliberated over six hours before finding Robinson guilty of armed robbery, using a knife in the commission of a felony, and being a habitual criminal under Neb.Rev.Stat. § 29–2221 (1979).

On direct appeal to the Nebraska Supreme Court, Robinson's court-appointed attorney filed a motion for leave to withdraw, accompanied by a brief in support of the motion, pursuant to Nebraska Supreme Court rules. In the sixteen-page brief, counsel presented the issues his client could possibly raise on appeal, then went on to analyze the challenges and conclude that all were meritless. For nearly seven pages counsel openly supported the trial court's various rulings with case citations and counsel's own opinions. The supreme court granted counsel's motion to withdraw, and Robinson pursued his appeal without assistance. The appeal was denied as frivolous. *State v. Robinson*, No. 82–028 (1982) (unpublished decision).

Robinson next filed a pro se post conviction action under Neb.Rev.Stat. §§ 29–3001 to –3004 (1979), but relief was denied for failure to provide a proper evidentiary record. *See State v. Robinson*, 215 Neb. 449, 339 N.W.2d 76 (1983). Robinson's second motion for post conviction relief, also brought pro se, was dismissed on the merits. *See State v. Robinson*, 218 Neb. 156, 352 N.W.2d 879 (1984). Robinson then filed the present petition for a writ of habeas corpus in the federal district court, pursuant to 28 U.S.C. § 2254 (1982). Counsel was appointed to represent Robinson in federal court.

---

**2.** This was disputed at the suppression hearing, but the trial court found consent. Robinson's appointed counsel did not call Lyncook to testify at the suppression hearing, an omission that forms the basis of Robinson's ineffective assistance of trial counsel claim.

**3.** The officer took the photograph back to the scene of the robbery and allegedly said "That's the man" as he showed the picture to Klaumann. Klaumann then identified Robinson from the photograph as being the robber. This procedure and the "parading" of Robinson in front of Klaumann, as discussed *infra*, produced another constitutional challenge to the identification.

**4.** Introduction of this jacket and the 8 × 10 photograph is the basis of Robinson's fourth amendment challenge.

**5.** Robinson challenges this testimony as violating his sixth amendment right to have counsel present at all interrogations. We discuss this issue briefly below. *See infra* note 8.

## Discussion

Among the various claims we need only discuss Robinson's argument that he was denied effective assistance of appellate counsel in violation of the sixth amendment.[6] Robinson argues to this court that his appointed trial counsel's motion to withdraw and accompanying brief denied him the constitutional protections required by *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We must agree.

*Anders* sets forth the conditions under which an indigent defendant's appointed counsel can withdraw on appeal. In order to protect the defendant's rights, counsel must first brief "anything in the record that might arguably support an appeal." *Id.* at 744, 87 S.Ct. at 1400. This mandatory briefing must be done as an *advocate:* "The constitutional requirement of sub-

stantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.*" *Id.* It is for the court to determine whether the appeal is frivolous, not the defendant's counsel. *Id.*

Our reading of the brief submitted by Robinson's counsel in his motion to withdraw leads us to the conclusion that *Anders'* dictates were woefully unsatisfied. Counsel did not act as an advocate for Robinson when he briefed all issues in favor of the government and concluded Robinson's claims were meritless.[7] Robinson had a right to expect counsel to brief and argue his case to the best of counsel's ability, showing the most favorable side of the defendant's arguments. Counsel changed the adversarial process into an inquisitorial one by joining the forces of

---

6. The sixth amendment right to effective counsel in criminal proceedings extends to indigent persons on direct appeal. *Douglas v. California*, 372 U.S. 353, 357–58, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963). As the Court stated in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967):

> [T]his Court has consistently held invalid those procedures "where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself."

*Id.* at 741, 87 S.Ct. at 1398 (quoting *Douglas*, 372 U.S. at 358, 83 S.Ct. at 817).

7. The following are excerpts from the brief:

> Prior to trial, there were hearings to determine the admissibility of the identification of the witness, statements made by the defendant to a fellow prisoner (Mr. Koppock) in jail, and evidence seized at his apartment at the time of the arrest. * * * There was no error in the Court's overruling the motions. * * * The fact that Mr. Koppock voluntarily chose to divulge information received from the defendant to the police is beyond the reach of *Miranda v. Arizona* under the facts in this case.
>
> \* \* \* \* \* \*
>
> The Court also properly allowed into evidence exhibits seized at the defendant's apartment. * * * Counsel cannot say that the Court abused its discretion in finding under the totality of the circumstnces that the police had received consent, at least from individu-

als who had identified themselves as the occupants of the apartment, pursuant to the explicit instructions of the defendant himself.

> \* \* \* \* \* \*
>
> It is clear from the totality of the circumstances that the identification by Mr. Klaumann was not tainted by any impermissible police practices, and specifically not by viewing a single photograph of the defendant at the scene. * * * It would appear that even if there had been some error in the photographic identification, that it would have been harmless beyond a reasonable doubt in view of the other identification evidence presented by Mr. Klaumann.
>
> \* \* \* \* \* \*
>
> In addition to the discussion of these matters in the context of the motion to suppress, which arguments are incorporated herein by reference, the Court has broad discretion in allowing the admission of articles or objects to which testimony relates when any fact or issue may be explained by such production. *State v. Eickmeier*, 187 Neb. 491, 191 N.W.2d 815 [1971]. The Court did not abuse its discretion in allowing admission of these objects.
>
> \* \* \* \* \* \*
>
> The defendant made the usual motion for a directed verdict. There is clearly sufficient evidence, if believed, to find the defendant guilty. * * * While there are some discrepancies, the credibility of the witnesses and the weight of their testimony is for the jury to decide and will not be disturbed unless clearly wrong. *State v. Leary*, [185 Neb. 76, 173 N.W.2d 520 (1970) ]. It is clear the jury chose to believe the State's version of the events that occurred rather than the defendant's story.

the state and working against his client. Upon counsel's withdrawal, Robinson was left to proceed pro se against the state, which had the benefit of appointed counsel's brief.

This court has applied the *Anders* principles in similar cases. In *Smith v. United States*, 384 F.2d 649 (8th Cir.1967), appointed counsel made an independent decision that his client had "no genuine issue or legal point which can be raised [on] appeal," *id.* at 649, cited cases and arguments supporting this conclusion, and sought to withdraw. This court, denying the motion to withdraw, observed: "The present application is of little help to either the court or the client. The cause of advocacy is not served to read a brief filed by appellant's own counsel asserting the government's position in the case." *Id.* at 650. The same approach was followed in *DeMarrias*

*v. United States*, 444 F.2d 162, 164–65 (8th Cir.1971): "A defendant is entitled to due process in the court's determination of whether his appeal is wholly frivolous. Due process requires the court, with the assistance of briefs of defense counsel setting forth any grounds arguably supporting the appeal, to make a full examination of the record before determining that the appeal is wholly frivolous."

We conclude that the "assistance" of counsel afforded to Robinson on direct appeal violated the sixth amendment as interpreted by the United States Supreme Court in *Douglas* and *Anders*, and as applied by this court in *Smith* and *DeMarrias*. As briefed and argued by petitioner's present counsel, the arguments for overturning Robinson's conviction are far from frivolous.[8] Robinson had a right to assistance

---

8. For example, a strong argument can be made that the testimony of Koppock, the paid government informant, violated Robinson's sixth amendment right to have counsel present during interrogation. *See Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964) (applying sixth amendment to preclude government agents' attempts to "deliberately elicit[ ]" incriminating statements in absence of accused's lawyer); *see also Kuhlmann v. Wilson*, — U.S. —, 106 S.Ct. 2616, 2630–31, 91 L.Ed.2d 364 (1986) (upholding conviction when informant was "merely listening"); *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 488–90, 88 L.Ed.2d 481 (1985) (affirming suppression of taped conversations between defendant and informant when state knowingly exploited opportunity to confront defendant without counsel).

Under *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the government violates a suspect's sixth amendment right to counsel when it creates a situation likely to induce the defendant to make incriminating statements outside the presence of his attorney. *Id.* at 270–73, 100 S.Ct. at 2186–88. To fall within this rule, however, the informant must be an agent of the state, acting under governmental instructions when eliciting information from fellow prisoners. *United States v. Surridge*, 687 F.2d 250 (8th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 614 (1982).

An arguable claim exists that Koppock was acting in the capacity of a government agent when he obtained evidence used to incriminate Robinson. Koppock, before he was arrested, was paid $100 per week to provide information on criminal activity. His employer in this regard was the Nebraska State Highway Patrol.

We recognize that Koppock was arrested and jailed on actual criminal charges, thus, like the *Surridge* informant, he was not a typical "plant" by the state used to secure information. *Cf. United States v. Hicks*, 798 F.2d 446, 448–49 (11th Cir.1986) (no violation when informant imprisoned on unrelated charges obtained jailhouse confession without instruction from government to do so), *cert. denied*, — U.S. —, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987). Also, there is no indication that Koppock was instructed to question Robinson or any other prisoner, as it is unclear whether the state knew that one of its informants had been arrested. *Cf. id.* at 448 (government "fortuitously" obtained the incriminating statements). Notwithstanding these points, the fact remains that Koppock was a paid law enforcement informant at all times relevant to this case and was acting as an agent of the state when he elicited the statements from Robinson. Koppock did what he was paid to do, even if he acted without specific instructions. *See Surridge*, 687 F.2d at 254 ("[T]he key issue is the extent of government involvement. When the government pays an informant, it is evidence (although not conclusive) that a prior agreement between the government and the informant existed, whether that agreement was explicit or implicit."); *cf. United States v. Sampol*, 636 F.2d 621, 638 (D.C.Cir. 1980) (disallowing testimony of "informant at large" when informant "forge[d] ahead on [his] own" in eliciting information from fellow inmate).

We point out again that it took two trials, and much deliberation in the second, for a jury to convict Robinson. Koppock's testimony may have tipped the balance toward the jury's guilty verdict. In light of this, appointed counsel had

of counsel in presenting these arguments to the Nebraska Supreme Court.

Present counsel is now familiar with Robinson's case and has performed well in this court. We are confident he could well-represent Robinson as appointed counsel in a plenary appeal before the state supreme court. Counsel should file a motion before the state supreme court seeking to reinstate his appeal and to appoint counsel to brief all issues. If the state supreme court reinstates Robinson's appeal, with new briefing and argument by appointed counsel, the federal district court should dismiss the present petition. This is the remedy approved by other federal courts when the dictates of *Anders* have been violated. *See Barnes v. Jones*, 665 F.2d 427, 436 (2d Cir.1981), *rev'd on other grounds*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (no *Anders* violation so no need for new appeal); *High v. Rhay*, 519 F.2d 109, 113 (9th Cir.1975); *Gulliver v. Dalsheim*, 574 F.Supp. 111 (S.D.N.Y.1983) (reinstating earlier grant of habeas writ unless new state appeal heard within 90 days), *rev'd on other grounds*, 739 F.2d 104 (2d Cir.1984) (finding no *Anders* violation). If the state supreme court fails to reinstate the appeal within a reasonable time, the district court should grant the writ of habeas corpus unconditionally. We therefore vacate the judgment of the district court and remand with direction to conditionally grant the writ of habeas corpus.

JUDGMENT REVERSED.

a duty to press the *Massiah* and *Henry* issue, and any other colorable issue, on direct appeal.