Edward E. LEE, Petitioner,

v.

Harold CLARKE, Respondent.

No. 4:CV91–3157.

United States District Court,
D. Nebraska.

Nov. 10, 1992.

Robert B. Creager, Berry, Anderson, Creager & Wittstruck, P.C., Lincoln, Neb., for Edward E. Lee.

Mark D. Starr, Atty. Gen., Lincoln, Neb., for Harold W. Clarke.

Donald B. Stenberg, Atty. Gen., Lincoln, Neb., interested party.

## MEMORANDUM OPINION AND ORDER

CAMBRIDGE, District Judge.

This matter is before the court on the Petitioner's objections, (Filing No. 19), to the Magistrate Judge's report and recommendation, (Filing No. 18).

This case was brought pursuant to 28 U.S.C. § 2254. Judge Piester recommends that the petition be denied. The Petitioner objects specifically on three grounds, all of which were discussed at great length by Judge Piester in his report and recommendation. The Petitioner then objects to the entire report and recommendation, stating: "That the Magistrate otherwise erred in failing to recommend that the Petition be granted." [1]

---

1. The Court advises the Petitioner that Local Rule of Practice 49(B) requires that objections to a report and recommendation "specifically identify the portions of the proposed [report and recommendation] to which objection is made and the basis for such objections."

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule of Practice 49(B), this Court has conducted a *de novo* review of the portions of the Magistrate Judge's findings and recommendations to which specific objections have been made. The Court concludes that the Magistrate Judge's report and recommendation is consistent with the evidence and the law and should therefore be adopted.

IT IS ORDERED:

1. The Magistrate Judge's report and recommendation, (Filing No. 18), is adopted; and

2. The Petitioner's objections, (Filing No. 19), are overruled.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Before the court for consideration is the writ of habeas corpus filed by Edward E. Lee. For reasons discussed more fully below, I shall recommend the writ be denied.

Under attack are petitioner's convictions for first degree murder and felon in possession of a firearm; he was sentenced to life imprisonment on the murder conviction and 20 months to 5 years imprisonment on the felon in possession conviction. Petitioner's convictions were upheld on direct appeal. *See State v. Lee*, 216 Neb. 63, 341 N.W.2d 600 (1983).

Petitioner then filed a postconviction motion in the Douglas County District Court, requesting his convictions [1] be set aside on grounds he was denied effective assistance of counsel when: (1) trial counsel failed to investigate or move for a change of venue due to pretrial publicity; (2) trial counsel failed to interview and/or produce a particular character witness for the defense; (3) trial counsel failed to object to the introduction of uncharged criminal activity, and failed to move to strike such evidence and

obtain a precautionary jury instruction regarding the evidence; and (4) trial counsel failed to challenge on appeal the sufficiency of the evidence to support the convictions. Additionally, due to statements made by petitioner during a deposition taken for purposes of the postconviction proceedings, the court, on its own motion, also considered the claim that trial counsel was ineffective for failing to permit petitioner to testify at trial. Following a hearing on the matter, the postconviction motion was denied. (Filing 11, Exhibit G at 15, 23).

After perfecting an appeal from the denial of postconviction relief, petitioner's court-appointed counsel filed a motion to withdraw on grounds he believed the appeal to be frivolous. Upon finding the appeal "wholly frivolous," the Nebraska Supreme Court granted counsel's motion to withdraw and affirmed the judgment of the district court denying postconviction relief. *See State v. Lee*, 226 Neb. xxix (1987).

Petitioner now challenges his convictions on the following seven grounds, five of which were presented in his postconviction motion:

(1) trial counsel failed to investigate and/or move for a change of venue following adverse pretrial publicity;

(2) trial counsel failed to interview and/or produce character witnesses for the defense regarding petitioner's good character and reputation for nonviolence;

(3) trial counsel failed to object to the introduction of irrelevant evidence of uncharged criminal activity and failed to move to strike such evidence and obtain a precautionary jury instruction to disregard such evidence;

(4) trial counsel failed to permit petitioner to testify in his own defense at trial;

(5) trial counsel failed to challenge on appeal the sufficiency of the evidence supporting the convictions; [2]

---

1. Although the postconviction motion was originally filed only on the first degree murder conviction, the court ordered (upon stipulation of counsel) that the postconviction motion be "deemed applicable" to the felon in possession

conviction as well. (Filing 11, Exhibit G at 15:4–7, 23:4–7).

2. I note the public defender who represented petitioner at trial, Lawrence Corrigan, was not the same public defender who handled the direct appeal. In fact, the record reflects that

(6) petitioner's postconviction counsel was ineffective when he moved to withdraw on grounds the appeal from the denial of postconviction relief was frivolous;

(7) the Nebraska Court Rule which allowed petitioner's court appointed counsel to withdraw upon a showing that the appeal was frivolous deprived petitioner of Equal Protection and Due Process of Law as secured by the United States Constitution, and denied petitioner his right to appeal as secured by the Nebraska Constitution and unidentified state statutes.

### Exhaustion and Procedural Default

The initial inquiry in any habeas proceeding is whether petitioner has exhausted his available state court remedies. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The exhaustion doctrine, codified in 28 U.S.C. § 2254(b), is based upon notions of federalism and comity, and requires a federal court, before considering the merits of a habeas claim, to determine that the identical claims raised in the habeas petition have either been presented to the highest court of the state in which the judgment of conviction was entered, or that there are no procedures presently available for such presentation. *Rose v. Lundy, supra.*

. In this instance respondent's answer specifically admits that petitioner has exhausted his state court remedies with respect to the claims presented herein. (Filing 7 at 1, 3).[3] When, as here, the state unequivocally concedes in pleadings that petitioner's claims have been exhausted in the state courts, that concession constitutes an express waiver of the exhaustion requirement. *Purnell v. Missouri Dept. of Corrections*, 753 F.2d 703, 708 (8th Cir. 1985). *See also Hampton v. Miller*, 927 F.2d 429, 431 (8th Cir.1991) (state expressly waives exhaustion requirement by conceding in pleadings that petitioner's claims have been exhausted in state courts); *Wade v. Armontrout*, 798 F.2d 304, 306 n. 1 (8th Cir.1986) (by failing to notify district court that petitioner had not exhausted a particular claim, the state waived the exhaustion requirement); *Mercer v. Armontrout*, 643 F.Supp. 1021, 1022 (W.D.Mo. 1986) (although 2 of the 5 claims presented in habeas petition were not properly raised in the state courts, state waived this exhaustion defect and thereby consented to have court adjudicate all 5 claims).

Therefore, although certain of petitioner's claims clearly have not been presented in the state courts[4], the state has expressly admitted exhaustion with respect to the habeas claims presented in this federal action. There being no apparent reason to

---

after trial counsel perfected an appeal to the Nebraska Supreme Court, his only direct involvement in the appeal was to fill out a form outlining what he believed to be legitimate issues on appeal. (Filing 11, Exhibit H–II at 28:17–29:14). Although the form was to be placed in the file and considered by the attorney handling the appeal, it did not represent "a direction" that these issues had to be raised on appeal. *Id.* In this habeas action, petitioner does not challenge the manner in which appellate counsel handled the direct appeal; rather, he alleges and argues that "trial counsel failed to raise on appeal" the sufficiency of the evidence underlying the convictions. Although it is admittedly unusual to challenge trial counsel's effectiveness with respect to an appeal in which he was not involved, there is no other way to legitimately construe petitioner's challenge. The petition challenges the effectiveness of only trial counsel; the postconviction motion challenged the effectiveness of only trial counsel; and the record does not contain evidence regarding the effectiveness of appellate counsel.

Thus, I have considered petitioner's challenges as directed only at the alleged failures of trial counsel, Mr. Corrigan.

**3.** In paragraph 2 of his response, respondent specifically admits paragraph 13 of the petition (which alleges petitioner has exhausted his state court remedies), and in paragraph 8, respondent makes the following statement:

As indicated in the response to paragraph 13 of the petition, respondent agrees that petitioner has exhausted his state court remedies, having taken a direct appeal, having commenced a postconviction action in the trial court and then having appealed the denial of his request for postconviction relief to the highest state court, which dismissed the appeal as frivolous.
(Filing 7 at 3).

**4.** Specifically, those claims pertaining to the withdrawal of his postconviction counsel on appeal.

reject the state's waiver of exhaustion in this instance, *see Hampton v. Miller*, 927 F.2d at 431 (federal courts will only reject state's waiver of exhaustion when doing so avoids injustice or manifestly serves the public interest), I shall proceed to consider the merits of petitioner's claims.

Before I do so, however, I must first address the arguments propounded in respondent's brief regarding issues of fair presentment and procedural default. Although respondent concedes that petitioner has exhausted his available state court remedies by filing a direct appeal, a postconviction motion and an appeal of the denial of postconviction relief, respondent nonetheless argues that—due to the procedural posture of the postconviction motion on appeal—the claims presented to the district court were not "fairly presented" to the Nebraska Supreme Court.[5] The procedural posture of the case on appeal resulted from the following chain of events.

After perfecting an appeal to the Nebraska Supreme Court from the denial of postconviction relief, petitioner's court appointed counsel filed a motion to withdraw on grounds he believed the appeal to be frivolous. (Filing 11, Exhibit G at 28). At that time, Nebraska Court Rule 3(B) provided that if court appointed counsel in a

postconviction action determined that an appeal was frivolous, the attorney could file a motion requesting leave to withdraw, supported by a brief and affidavit setting forth facts suggesting counsel had made a thorough and conscientious review of the record and had determined that the appeal was without merit and wholly frivolous.[6] *See, e.g., State v. Harper*, 214 Neb. 911, 917, 336 N.W.2d 597 (1983) (discussing the origins and purpose of Nebraska Court Rule 3(B) providing for attorney withdrawal in frivolous postconviction appeals), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1016, 79 L.Ed.2d 246 (1984). In this instance, counsel's motion to withdraw was supported by a brief and an affidavit stating he had reviewed the record, researched the applicable law, and determined the appeal was without merit and wholly frivolous.[7]

The Nebraska Supreme Court notified petitioner by certified letter of his counsel's motion to withdraw, and petitioner was given 30 days to respond to the motion by explaining "what was wrong with the trial and why the judgment of the District Court should be changed." (Filing 11, Exhibit G at 32). Petitioner timely responded by filing a letter explaining why he believed his appeal had merit. (Filing 11, Exhibit G at

---

**5.** The state's admission of exhaustion—although explicit—was phrased in such a manner as to create a question regarding whether the state was waiving any procedural defaults as well. I do not interpret the state's waiver of exhaustion in this instance to amount to a waiver of any resulting procedural defaults; rather, it appears the state merely was conceding that petitioner had no available state court remedies after having taken a direct appeal, filing a postconviction motion and appealing from the denial thereof. Nevertheless, the state is cautioned that, in the future, admissions pertaining to waiver of exhaustion should be clearly set out and any claims of procedural default should be explicitly reserved and addressed in the answer.

**6.** Nebraska Court Rule 3 has since been amended. *See Neb.Ct.R.* 3 (1992). I note that, in the context of direct appeals, the Eighth Circuit has repeatedly disapproved of the practice of submitting appellate briefs arguing in favor of the government and concluding appellant's claims are meritless. *See Evans v. Clarke*, 868 F.2d 267, 268 (8th Cir.1989) (brief filed by appointed counsel seeking to withdraw under Nebraska Court Rules fell short of *Anders* requirements; counsel did not refer to anything in record

which could arguably support an appeal, but rather gave only arguments in favor of affirming the conviction) (discussing *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)); *Robinson v. Black*, 812 F.2d 1084, 1086 (8th Cir.1987) (brief filed by attorney seeking leave to withdraw pursuant to Nebraska Court Rules failed to satisfy *Anders* requirements; attorney was not acting as an advocate for the client when he briefed client's challenges on appeal and concluded all were meritless), *cert. denied*, 488 U.S. 985, 109 S.Ct. 541, 102 L.Ed.2d 571 (1988).

**7.** Counsel's affidavit contained the following statement:

[C]ourt appointed counsel in the above-entitled post conviction appeal, states he has read the records of the original trial, direct appeal, transcript and Bill of Exceptions in the post conviction action, has researched the applicable law, and has made a thorough, careful and conscientious review of this matter and has determined that this appeal is without merit and wholly frivolous.
(Filing 11, Exhibit G at 30).

33–34). The Nebraska Supreme Court subsequently found the appeal "wholly frivolous" and affirmed the district court's denial of postconviction relief, granting counsel's motion to withdraw. (Filing 11, Exhibit I at 2:5–8).

Respondent suggests that, due to the manner in which the supreme court summarily affirmed the denial of postconviction relief, those claims presented to the district court in the postconviction motion (and now asserted in this habeas petition as claims 1–5), were never "fairly presented" to the Nebraska Supreme Court. Respondent suggests petitioner therefore has committed a procedural default with respect to those claims. I disagree.

■ Fair presentment requires that the highest court of the state rendering the judgment of conviction have had a " 'fair opportunity' to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). In this instance, although petitioner's attorney was permitted to withdraw prior to the submission of briefs setting forth specific assignments of error, it is nonetheless apparent that when determining whether the appeal was frivolous, the Nebraska Supreme Court considered the record of postconviction proceedings in the district court. *See* Filing 11, Exhibit G at 32 (certified letter from supreme court to petitioner explaining that the court would examine the attorney's motion and materials submitted in support thereof, petitioner's response, and the "record of proceedings" to determine whether the appeal was frivolous). Furthermore, published opinions of the Nebraska Supreme Court support the conclusion that records of postconviction proceedings in the district court are considered when determining whether a postconviction appeal should be summarily dismissed as frivolous:

[C]ourt-appointed counsel in a postconviction case ... may file a motion in this court, pursuant to Rule 3B, requesting leave to withdraw, supported by a brief and an affidavit setting out the fact that counsel has made a thorough and conscientious examination of the record and has determined the appeal to be without merit and wholly frivolous. Then this court may proceed, after a *full examination of all the proceedings,* to decide whether the case is wholly frivolous. If we find it is so wholly frivolous, we may grant counsel's request to withdraw and affirm the judgment. *On the other hand, if we find any of the legal points arguable on their merits* and therefore not frivolous, we shall, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*State v. Harper*, 214 Neb. 911, 917, 336 N.W.2d 597 (1983) (emphasis supplied), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1016, 79 L.Ed.2d 246 (1984).

■ Because the Nebraska Supreme Court was required by court rules to make a full examination of the legal arguments in the record prior to determining whether the appeal was frivolous, the court had a " 'fair opportunity' to apply controlling legal principles" to those claims presented by petitioner in his postconviction motion. *See Anderson v. Harless, supra.* Therefore, I conclude such claims were fairly presented, and no issue of procedural default need be addressed.

### Ineffective Assistance of Trial Counsel

Petitioner raises five specific claims under this heading which I address separately. Claims of ineffective assistance of counsel are governed by the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must show:

(1) that his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) that he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.

*Lawrence v. Lockhart,* 767 F.2d 449, 450 (8th Cir.1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ The question of whether a habeas petitioner was afforded effective assistance of counsel is a mixed question of law and fact. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; *United States v. Auerbach,* 745 F.2d 1157, 1161 n. 3 (8th Cir.1984). Thus, although the ultimate question of whether a habeas petitioner received effective assistance of counsel is a question of law to be determined by this court, "a state court's factual findings made in the course of deciding a claim of ineffective assistance are presumed correct." *Wilson v. Armontrout,* 962 F.2d 817, 819 (8th Cir.1992). *See also* 28 U.S.C. § 2254(d).

■ First, petitioner alleges his trial counsel was ineffective for failing to move for a change of venue following adverse pretrial publicity. Following an evidentiary hearing on this claim, the postconviction trial court found that trial counsel made a strategic choice not to request a change of venue:

> trial counsel has adequately and reasonable explained his strategy [in failing to move for a change of venue] and his concern that moving the case to a less populated area could have resulted in a jury even less inclined to be sympathetic to the Defendant than one selected from an urban center.

(Filing 11, Exhibit G at 17). In habeas corpus proceedings, federal courts "are bound by the state court's factual finding that counsel made a strategic choice" regarding trial decisions. *Smith v. Jones,* 923 F.2d 588, 590 (8th Cir.1991) (citing 28 U.S.C. § 2254(d); *Brown v. Lockhart,* 781

F.2d 654, 658 (8th Cir.1986)). The factual findings of the postconviction trial court are binding in this court unless the petitioner can establish that these findings were erroneous or not supported by the record. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Graham v. Solem,* 728 F.2d 1533 (8th Cir.); *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984).

Petitioner has failed to show that the factual findings of the state court are either erroneous or lack fair support in the record. Rather, petitioner suggests this court should disregard the factual findings of the postconviction trial court because, when ultimately determining whether petitioner was afforded effective counsel, the trial court applied a legal standard different from the one set forth by the Supreme Court in *Strickland.*[8]

■ Under the circumstances presented by this case, the fact that the trial court weighed the facts against the wrong legal standard when determining the ultimate question of whether petitioner received effective assistance of counsel does not require that I disregard the subsidiary factual findings of the court as well. Based on the record provided and the trial court's subsidiary findings of fact contained therein, this court will make an independent evaluation of whether petitioner was afforded effective counsel, and in doing so will apply the proper legal standard set forth in *Strickland.*

The postconviction court found that petitioner's trial counsel made a strategic decision not to request a change of venue based upon concerns that moving the case to a less populated area might result in a jury even less inclined to be sympathetic to this client. (Filing 11, Exhibit G at 17). In the absence of evidence suggesting this

---

**8.** In contrast to the legal standard articulated by the Supreme Court in *Strickland,* the Nebraska courts utilize the following "locality" rule to assess the validity of claims asserting ineffective assistance of counsel:

> When, in a postconviction motion, a defendant alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether

the attorney, in representing the accused, performed at least as well as an attorney with ordinary training and skill in the criminal law in the area. Further, there must be a showing of how the defendant was prejudiced in the defense of his or her case as a result of the attorney's actions or inactions.

*State v. Meis,* 233 Neb. 355, 445 N.W.2d 610 (1989).

factual finding is erroneous or lacks support in the record, *see Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), I am bound by the factual finding that counsel's decision not to request a change of venue was strategic. *See Smith v. Jones,* 923 F.2d at 599.

Counsel's strategic choice is entitled to great deference, *see Smith v. Jones,* 923 F.2d at 590, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. As mentioned earlier, to prevail on a claim of ineffective assistance of counsel, petitioner must show his counsel's actions were unreasonable and he suffered prejudice as a result of counsel's deficiencies. *Strickland,* 466 U.S. at 691–92, 104 S.Ct. at 2066–67. As trial counsel's decision not to move for a change of venue was not unreasonable under the circumstances, petitioner is not entitled to relief on this claim.

Petitioner next argues that trial counsel was ineffective for failing to produce character witnesses regarding petitioner's good character and reputation for nonviolence. Following an evidentiary hearing on this claim, the postconviction trial court found the matter was a decision of trial strategy:

[T]he decision to call or not to call a particular witness ... is a matter of trial strategy. The Supreme Court of this State has consistently held that the choice so made will not, without more, sustain a charge of ineffectiveness of counsel.

(Filing 11, Exhibit G at 16). Not only is trial counsel's strategic choice entitled to great deference, *Smith v. Jones,* 923 F.2d

at 590, the record reflects it was a reasonable strategic choice as well.

Petitioner's deposition testimony indicates the only witness he wanted called but who was not called to testify was Susan Welch. (Filing 11, Exhibit H–II, Lee deposition at 25:17–26:9).[9] Trial counsel testified that he believed "putting [Susan Welch] on the stand would have been very poor trial tactics" (Filing 11, Exhibit H–II, Corrigan deposition at 41:2–6), and it would be "absolutely foolish" to present a character defense. (Filing 11, Exhibit H–II, Corrigan deposition at 27:13–23). Trial counsel expressed concern that the prosecution would present damaging evidence regarding petitioner's past crimes, and explained:

the simple fact of the matter is if we put in character witness testimony, that he had good character, his bad character was going to come out, and they could put in any number of witnesses to show his character for evil or dishonesty, or whatever you want to call it. And they would be unlimited in their ability to get that done.

(Filing 11, Exhibit H–II, Corrigan deposition at 28:10–16). Counsel was also concerned that if Susan Welch were put on the stand, the jury might draw unfavorable inferences about the relationship between petitioner, Ms. Welch, and another woman who testified.[10] In short, trial counsel's strategic decision not to call the character witness petitioner now alleges he wanted to testify at trial was reasonable; petitioner is not entitled to relief on this claim.

Petitioner next alleges trial counsel was ineffective for failing to object to the prosecution's introduction of evidence regarding uncharged criminal activity and failing to

---

**9.** Additionally, I note the trial record reflects that petitioner was asked whether there were any witnesses he wanted put on the stand who had not been called or any other testimony he wanted elicited on his behalf, and he replied "no." (Filing 11, Exhibit C–III at 595:21–25).

**10.** Trial counsel testified regarding his concerns as follows:

Susan Welch I talked to, and she was very young—I believe she was about seventeen years old, and [petitioner] had kind of run around the country—he had run around part of the country at least, with Susan Welch and

this other woman, Bonnie Welker. I was under the impression that there was a strange relationship, if that is the way to term it, between Mrs. Welker and [petitioner], and I was also under the impression that the relationship went into sexual connotation possibilities, at least, with the seventeen-year-old. It certainly was going to show that was a possibility for the jury to consider if we ever tried to put it in.

(Filing 11, Exhibit H–II, Corrigan deposition at 27:25–28:10).

obtain a precautionary jury instruction to disregard such evidence. The postconviction trial court made the following findings:

> Concerning the Defendant's contention that the trial counsel failed to request a cautionary instruction and failed to object to evidence of uncharged criminal activities, a review of the Bill of Exceptions indicates the trial counsel did object to that evidence. While no cautionary instruction was requested, this was clearly a matter of trial strategy, as was fully explained by trial counsel in his deposition.

(Filing 11, Exhibit G at 16).[11] The record supports the postconviction trial court's finding that trial counsel objected to the evidence of uncharged criminal activity, *see* Filing 11, Exhibit C–II at 357:6–368:4, and I am bound by the factual finding that counsel's decision not to request a cautionary statement was one of strategy. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Smith v. Jones,* 923 F.2d at 590; *Brown v. Lockhart,* 781 F.2d at 658.

As discussed above, strategic decisions of counsel are entitled to great deference, *Smith v. Jones,* 923 F.2d at 590, and reasonable strategic choices are virtually unchallengeable. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. In this instance trial counsel testified that if the trial judge had attempted to give a cautionary instruc-

tion regarding the evidence of uncharged criminal activity, counsel would have objected out of concern that such an instruction would accentuate the misconduct and "make it ten times worse." (Filing 11, Exhibit H–II, Corrigan Deposition at 36:16–37:1). I conclude trial counsel's strategic decision not to request a cautionary instruction was reasonable under the circumstances, and does not support a claim of ineffective assistance of counsel under *Strickland.*

■ Petitioner next alleges his trial counsel was ineffective for failing to permit him to testify in his own defense at trial. With respect to this claim, the postconviction trial court made the following finding:

> The record amply illustrates that it was the Defendant that made this decision after full and complete discussions with the trial counsel, and for the defendant to now contend that he was not permitted to testify by trial counsel is without justification. The Court completely credits the deposition of the trial counsel on this issue.

(Filing 11, Exhibit G at 16). The record supports the trial court's finding that petitioner chose not to testify after discussing with counsel at great length the pros and cons of taking the stand in his own defense. (Filing 11, Exhibit C–III at 594:6–595:25).[12] Furthermore, underlying "sub-

---

11. Petitioner does not argue these factual findings were erroneous or lack fair support in the record; rather, he "complains only that the trial court's analysis was conducted under a standard of review different from that applicable in federal cases, and there is no 'evidence' to support the conclusion." (Petitioner's Brief at 11). I do not construe petitioner's argument that there is no "'evidence' to support the conclusion" as an argument suggesting the trial court's factual findings lack support in the record. Rather, it appears petitioner is simply reiterating his argument that the record contains no "evidence" regarding the locality standard applied by the postconviction trial court to determine counsel's effectiveness, because there was nothing in the record defining how an attorney with ordinary training and skill in criminal law in the area would have performed. *See* Petitioner's Brief at 4. As explained earlier, the fact that the trial court weighed its factual findings against the wrong legal standard when determining the ulti-

mate question of whether petitioner received effective assistance of counsel does not require that I disregard the underlying factual findings of the court. *See* discussion *supra* at 1427.

12. Trial counsel testified that on a number of occasions prior to trial he discussed with petitioner the various advantages and disadvantages of taking the stand. (Filing 11, Exhibit H–II, Corrigan deposition at 16:20–24:20). Among the disadvantages discussed were concerns that: (1) the jury would be less receptive of petitioner if he did not testify; (2) there was a strong possibility petitioner might not get a manslaughter instruction if he failed to take the stand and testify regarding accidental discharge of the gun; (3) petitioners's previous felony record would come out and "he had a bad record;" (4) the circumstances surrounding petitioner's arrest were liable to come out on cross examination, possibly connecting him to a robbery occurring not long before his arrest; (5) it ap-

sidiary factual questions," as well as determinations of credibility, are entitled to § 2254(d)'s presumption of correctness. *Miller v. Fenton,* 474 U.S. 104, 112–14, 106 S.Ct. 445, 450–52, 88 L.Ed.2d 405 (1985); *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). Thus, it is not the province of this court to assess the credibility of witnesses or resolve conflicts in the evidence. The postconviction trial court credited trial counsel's deposition testimony and rejected as unjustified petitioner's contention that counsel did not permit him to take the stand in his own defense. The trial court's findings of fact are binding in this court unless petitioner can establish that these findings were erroneous or not supported by the record. 28 U.S.C. § 2254(d); *Sumner v. Mata, supra; Graham v. Solem, supra.* This he has not done.

Rather, petitioner suggests trial counsel "passed the buck" when, after advising petitioner regarding the advantages and disadvantages of taking the stand, he then allowed petitioner to make his own decision. (Petitioner's Brief at 7).[13] Interestingly, petitioner concedes that, under the circumstances, it would have not have been unreasonable for trial counsel to recommend that petitioner take the stand; likewise, petitioner concedes it would not have been unreasonable for counsel to recommend petitioner refuse to take the stand. (Petitioner's Reply Brief at 6–7). Nonetheless, petitioner suggests that counsel's lack of an affirmative recommendation one way or the other evidences ineffectiveness. (Petitioner's Reply Brief at 7).

■ Despite petitioner's assertions, trial counsel's decision to properly inform petitioner of the possible advantages and disad-

vantages of testifying, and then permit petitioner to make an informed decision, did not amount to an unreasonable act or omission on the part of counsel:

> The decision whether a criminal defendant should take the witness stand in his own trial unquestionably has tremendous strategic importance. Nevertheless, the mere fact that such a decision involves trial strategy does not itself mandate that the decision ultimately rest with defense counsel.... *Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.*

*United States v. Teague,* 953 F.2d 1525, 1532–33 (11th Cir.1992) (emphasis supplied). *Accord Don v. Nix,* 886 F.2d 203, 207 (8th Cir.1989) (accused has ultimate authority to make certain fundamental decisions regarding his or her case, among them, whether to testify on his or her own behalf) (quoting *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).

Applying the *Strickland* standard to these facts, I first conclude that the petitioner has failed to identify any act or omission by trial counsel which was unreasonable or which fell "outside the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Trial counsel properly apprised petitioner of the advantages and disadvantages of taking the stand. It was not unreasonable, especially in light of the circumstances, to allow petitioner to make the final decision regarding whether to testify.

---

peared the prosecutor may try to introduce evidence of petitioner's involvement in a Kansas City stabbing; (6) there were some strong rebuttal witnesses who could be called, among them an individual who, if discovered by the prosecution, could testify petitioner bragged to him about shooting a man in Omaha. Also discussed were the following advantages to taking the stand: (1) petitioner would be assured of getting a manslaughter instruction; (2) the jury would have an opportunity to meet petitioner, and counsel believed taking the stand would help petitioner substantially. Counsel believed

petitioner would make a good witness as he was intelligent, had been fairly consistent in his story and had a good appearance.

13. Trial counsel testified that although he generally made a recommendation that his client either take the stand or not, he believed, in petitioner's situation, that there were so many advantages and disadvantages that the decision was best left to his client, and either way he would be comfortable abiding by his client's wishes. (Filing 11, Exhibit H–II, Corrigan deposition at 22:8–23).

Even if I were to accept as true the petitioner's assessment that trial counsel should have made an affirmative recommendation regarding whether to take the stand, petitioner has wholly failed to convince this court that counsel's failure caused actual prejudice in the present context. Indeed, in light of petitioner's concession that it would not have been unreasonable to recommend either taking the stand or not taking the stand, it is difficult to see how petitioner was prejudiced by being permitted to make his own decision not to testify. This claim of ineffective assistance of counsel must fail.

Petitioner next alleges trial counsel was ineffective for failing to challenge on appeal the sufficiency of the evidence supporting the convictions. This claim is particularly perplexing in light of the fact that trial counsel did not handle petitioner's direct appeal. The record reflects that after petitioner was sentenced, the case was assigned to another public defender for purposes of pursuing an appeal; trial counsel's only direct involvement in the appeal after that point was to fill out a routine form outlining what he believed "might be legitimate issues on appeal...." (Filing 11, Exhibit 11, Corrigan deposition at 28:17–29:4). The form was not a directive to appellate counsel that the outlined issues should be pursued on direct appeal, but rather a list of the areas trial counsel "thought were important." *Id.* at 29:2–4. After trial counsel completed the form, the case was turned over to Mr. Bennet Hornstein and, from that point on, anything dealing with the appeal, including correspondence received from petitioner, was turned over to Mr. Hornstein. *Id.* at 29:4–14.[14]

I discuss this history only to illustrate the proper scope of petitioner's claim. Petitioner does not challenge herein, nor did he challenge in the state courts, the effectiveness of the manner in which *appellate* counsel handled the direct appeal.[15] Neither does he allege trial counsel failed to make appropriate motions or objections thereby foreclosing certain issues on appeal. Rather, petitioner alleges that "trial counsel failed to raise" a sufficiency of the evidence claim on appeal. This claim appears to have been improvidently phrased; trial counsel did not handle the direct appeal, so he could not have failed to raise a particular claim. Although admittedly foggy, petitioner's claim appears to be centered around the suggestion that it was somehow improper for trial counsel to defer to the judgment of appellate counsel regarding which issues to pursue on direct appeal. (Petitioner's Brief at 11–12). Such a claim is not supported by the record, and does not support a claim of ineffective assistance of counsel.

Trial counsel's deposition testimony indicates that although he had opinions regarding the legitimacy of challenges to the sufficiency of the evidence underlying the convictions (Filing 11, Exhibit H–II, Corrigan deposition at 31:5–34:16), he left the tactical decision regarding which issues to raise on direct appeal to the assigned appellate attorneys—attorneys who trial counsel considered to be "two of the most accomplished appellate criminal lawyers in the country." (Filing 11, Exhibit H–II, Corrigan deposition at 33:19–22). I simply cannot conclude that giving deference to the professional decisions of experienced appellate attorneys assigned to handle the appeal was unreasonable under *Strickland.*

---

**14.** Due to Mr. Hornstein's illness, the appeal was eventually reassigned to Mr. Stanley Krieger. (Filing 11, Exhibit H–II at 29:8–11).

**15.** If petitioner desires to challenge the effectiveness of appellate counsel—something he has done neither this action nor in his postconviction action—he must first present such a claim in the state courts. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, even if petitioner is able to exhaust his state court remedies with respect to such a claim of ineffective assistance of appellate counsel, the presentation of such a claim in a subsequent § 2254 action would subject the action to scrutiny under the abuse-of-the-writ doctrine:

A second or successive petition may be dismissed if the judge finds ... new and different grounds are alleged [and] the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ. Rule 9(b) of the Rules Governing Section 2254 Proceedings.

This unusual claim does not entitle petitioner to habeas relief.

### Summary Dismissal of Postconviction Appeal

Petitioner raises two claims under this heading. First, he alleges his postconviction counsel was ineffective when he moved to withdraw on grounds the appeal from the denial of postconviction relief was frivolous. Second, he alleges the Nebraska Court Rule which allowed petitioner's court appointed counsel to withdraw upon a showing that the appeal was frivolous deprived petitioner of Equal Protection and Due Process of Law as secured by the United States Constitution, and denied petitioner his right to appeal as secured by the Nebraska Constitution and unidentified state statutes.[16] Neither of these claims entitles petitioner to federal habeas relief.[17]

 Because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) and *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989)), claims of ineffective assistance of postconviction counsel are not cognizable in federal habeas corpus. *Coleman,* — U.S. at —, 111 S.Ct. at 2566; *Frink v. State of Iowa,* 968 F.2d 734, 737 (8th Cir.1992).

Regarding petitioner's allegation that his due process and equal protection rights were violated by a Nebraska Court Rule that allowed his appointed postconviction counsel to withdraw from the appeal upon a showing the appeal was frivolous, it is clear that no cognizable claim is presented.

In *Pennsylvania v. Finley, supra,* respondent, convicted of second degree murder, filed a postconviction motion in the state courts and, as required by Pennsylvania law, counsel was appointed to represent her. After reviewing the record, counsel determined there were no arguable bases for collateral review; counsel advised the court in writing of his conclusions and requested permission to withdraw. The trial court then conducted an independent review of the record and, agreeing there were no meritorious issues, dismissed the postconviction motion. The Pennsylvania Superior Court determined the conduct of postconviction counsel violated respondent's constitutional rights, and held that *Anders* procedures must be followed when court-appointed counsel sought to withdraw from a postconviction appeal on grounds it was meritless.[18]

The United States Supreme Court reversed, noting that states have no obligation to provide postconviction review, and when they choose to do so, the constitution does not require that the state supply an attorney as well. *Id.* at 557, 107 S.Ct. at 1994. The Court went on to hold that the procedures followed by the state court in allowing court-appointed counsel to withdraw violated neither the Due Process Clause nor the Equal Protection Clause:

---

16. I must note that § 2254 provides a remedy for those in custody pursuant to a state court judgment when their custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Therefore, petitioner is not entitled to habeas relief on his claims that the Nebraska Court Rule allowing court appointed counsel to withdraw deprived him of rights secured by the Nebraska Constitution and state statutes.

17. Neither of these claims were fairly presented in the state courts, yet I need not address any matters of procedural default because I conclude the claims are meritless. *See Lashley v. Armontrout,* 957 F.2d 1495, 1490–99 (8th Cir. 1992), *petition for cert. filed,* 61 U.S.L.W. 3194 (U.S. Sept. 3, 1992) (No. 92–409).

18. In *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) the Supreme Court held that when an attorney appointed to represent an indigent defendant on direct appeal finds a case frivolous, the attorney should:

> so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

*Id.* at 744, 87 S.Ct. at 1400.

Since respondent has no underlying constitutional right to appointed counsel in state postconviction proceedings, she has no constitutional right to insist on *Anders* procedures which were designed solely to protect that underlying constitutional right.

*Pennsylvania v. Finley* at 557, 107 S.Ct. at 1994. Thus, *Pennsylvania v. Finley* instructs that, even when states choose to afford postconviction applicants assistance of counsel, they may do so "without requiring the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal of right." *Id.* at 559, 107 S.Ct. at 1995.

Petitioner's claim does not implicate constitutional concerns and does not entitle him to habeas relief. I shall recommend this petition be denied in its entirety.

IT THEREFORE HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B) that this petition be denied.

The petitioner is notified that unless objection is made within ten days after being served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.

Dated October 21, 1992.